1

2

3

4

5

6

7

8                      UNITED STATES DISTRICT COURT

9                    SOUTHERN DISTRICT OF CALIFORNIA

10

11  STEINAR MYHRE,                  )   Civil No. 13cv2741 BAS(RBB)
                                    )
12            Plaintiff,            )   **ORDER GRANTING IN PART AND**
                                    )   **DENYING IN PART PLAINTIFF'S**
13  v.                             )   **MOTION FOR RULE 37 SANCTIONS**
                                    )   **AGAINST DEFENDANTS IMS-NEW**
14  SEVENTH-DAY ADVENTIST CHURCH    )   **JERSEY, IMS-TEXAS,**
    REFORM MOVEMENT AMERICAN UNION  )   **IMS-GEORGIA, IMS-FLORIDA, AND**
15  INTERNATIONAL MISSIONARY        )   **IMS-MIAMI [ECF NO. 79]**
    SOCIETY, a New Jersey           )
16  corporation; INTERNATIONAL      )
    MISSIONARY SOCIETY SEVENTH-DAY  )
17  ADVENTIST CHURCH REFORM         )
    MOVEMENT GENERAL CONFERENCE, a  )
18  California corporation; and     )
    DOES 1-100,                     )
19                                  )
              Defendants.           )
20  _____)

21        Plaintiff Steinar Myhre's Motion for Rule 37 Sanctions Against

22  Defendants IMS-New Jersey, IMS-Texas, IMS-Georgia, IMS-Florida, and

23  IMS-Miami [ECF No. 79] ("Motion for Sanctions") was filed on May

24  16, 2014.  Defendants filed a response in opposition [ECF No. 82],

25  and Myhre filed a reply [ECF No. 84].

26        The hearing on the motion was set for June 16, 2014.  The

27  Court determined the matter to be suitable for resolution without

28  oral argument, submitted the motion on the parties' papers pursuant

to the Local Civil Rule 7.1(d), and vacated the motion hearing.
(Mins., June 13, 2014, ECF No. 87.)  For the following reasons,
Plaintiff's Motion for Sanctions is **GRANTED in part** and **DENIED in
part**.

## I.  FACTUAL BACKGROUND

On November 14, 2013, Plaintiff Steinar Myhre filed a
Complaint against Defendants Seventh-Day Adventist Church
Reform Movement American Union International Missionary Society, a
New Jersey Corporation ("IMS-NJ") and International Missionary
Society Seventh Day Adventist Church Reform Movement General
Conference ("IMS-GC"), alleging breach of contract, breach of the
covenant of good faith and fair dealing, fraud, interference with
contract, conversion, and civil conspiracy.  (Compl. 1-2, ECF No.
1.)  Plaintiff is a retired pastor who seeks money damages and
injunctive relief for the alleged termination of his pension
benefits by his former employer.  (Id. at 3.)  Myhre claimed that
he was forced to retire over a theological disagreement in 2009; by
then, he had worked for Defendants for over twenty-seven years as
an ordained minister.  (Id. at 3-5.)  Plaintiff stated that his
retirement payments ceased in 2013.  (Id. at 9-10.)

Myhre alleged that he resides in Colorado and that Defendant
IMS-NJ is a New Jersey corporation headquartered in Georgia and
doing business in various states, including the State of California
and the County of San Diego.  (Id. at 2.)  Plaintiff claimed that
Defendant IMS-GC is a California corporation headquartered in
Georgia and doing business in various states, including the State
of California.  (Id.)  On January 6, 2014, Plaintiff amended his
Complaint, adding five more Defendants:  (1) The Seventh-Day

2

Adventist Church Reform Movement American Union International Missionary Society, a Texas corporation ("IMS-TX"); (2) The Seventh-Day Adventist Church Reform Movement American Union IMS, Inc., a Georgia corporation ("IMS-GA"); (3) Miami Dade Area Seventh-Day Adventist Church Reform Movement, International Missionary Society Inc., a Florida corporation ("IMS-Miami"); (4) The Seventh-Day Adventist Church Reform Movement American Union International Missionary Society, a Florida corporation ("IMS-FL"); and (5) Tampa Bay Area Seventh Day Adventist Church Reform Movement, International Missionary Society Inc., a Florida corporation ("IMS-Tampa").  (Am. Compl. 2-3, ECF No. 15.)

Myhre's Amended Complaint states that "Defendant entities are part of a singular, hierarchical church organization that collectively conducts business throughout the United States and the world, with each level answerable to, and controlled by, higher levels of the organization." (Id. at 3.)  Referring to all Defendants collectively as "IMS," Plaintiff also alleged, on information and belief, that "Defendant IMS has officially registered as a non-profit religious organization in the United States via a single entity reference, specifically, 'International Missionary Society Seventh-Day Adventist Church,' EIN 71-0905495, without any reference therein to either 'American Union' or 'General Conference.'" (Id.)  In the Amended Complaint, Myhre also asserts:

> 15. Defendants IMS-AU-NJ, IMS-Tampa, IMS-AU-TX, IMS-AU-GA, IMS- Miami, and IMS-AU-FL are indistinguishable for purposes of liability under the facts of this case, and are treated as a single entity by Plaintiff herein, collectively referred to as "Defendant American Union" unless otherwise specified in this Amended Complaint.

16. Upon information and belief, and based on admissions of Defendants, Defendant American Union has not maintained any principal place of business anywhere for almost 30 years. However, Defendant American Union has churches located in various states, including five churches in California, five in Florida, three in Georgia, two each in New York and Texas, and one each in Illinois, Colorado, New Jersey, Rhode Island, Virginia, and Washington DC.

(Id. at 3-4.)

Myhre alleged that jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states and the amount of controversy exceeds $75,000. (Id. at 4.) Plaintiff claimed that venue is proper in this district "because Defendant American Union resides in this district (by virtue of being registered to do business in California, having a church located in Vista, CA in the Southern District of California, and having further personnel located in Oceanside, CA) . . . ." (Id.)

Currently pending before United States District Court Judge Cynthia A. Bashant are four motions to dismiss filed by the Defendants [ECF No. 81]. Defendant IMS-NJ's Motion to Dismiss for Lack of Subject Matter Jurisdiction or Improper Venue argues that because IMS-NJ's principal place of business is in Colorado, it is a citizen of Colorado and the case must be dismissed for lack of diversity jurisdiction. (Def. [IMS-NJ's] Mot. Dismiss Attach. #1 Mem. P. & A. 8, ECF No. 31.) In the alternative, IMS-NJ argues that the case must be dismissed for improper venue because not all of the corporate Defendants are residents of California. (Id. at 13-14.) Defendant IMS-GC moves to dismiss for failure to state a claim, arguing that Plaintiff fails to allege any facts against it. (Def. [IMS-GC's] Mot. Dismiss Attach. #1 Mem. P. & A. 6, ECF No.

4

32.)  IMS-GC also claims that it is a California corporation with a principal place of business in Georgia, and it seeks dismissal for improper venue or transfer to the Northern District of Georgia. (Id. at 11-14.)

Defendants IMS-TX, IMS-GA, IMS-Miami and IMS-FL filed a Motion to Dismiss for Lack of Subject Matter Jurisdiction or Improper Venue, arguing that both IMS-GA and IMS-FL are citizens of Colorado for purposes of diversity jurisdiction.  (Defs [IMS-TX, IMS-GA, IMS-Miami & IMS-FL's] Mot. Dismiss Attach. #1 Mem. P. & A. 12, ECF No. 34.)  Finally, Defendant IMS-Tampa filed a Motion to Dismiss for Improper Venue or, in the Alternative, to Transfer; it claims that transfer to Florida is proper because its principal place of business is in Florida.  (Def. [IMS-Tampa's] Mot. Dismiss Attach. #1 Mem. P. & A. 6, ECF No. 39.)  In the alternative, it moves to transfer this case to Georgia because IMS-NJ's[1] principal place of business is in Georgia.  (Id.)

In response to Defendants' challenges to jurisdiction and venue, Plaintiff served discovery requests and subsequently brought a Motion to Compel seeking production of documents and interrogatory answers related to the citizenship of IMS-NJ, IMS-GA, and IMS-FL for diversity jurisdiction, as well as the Defendants' contacts with the Southern District for purposes of venue.  (Pl.'s Mot. Compel Attach. #1 Mem. P. & A. 7-8, ECF No. 42.)  Myhre also requested Defendants' corporate documents to ascertain whether Defendants observed corporate formalities to withstand allegations that they are alter egos of each other.  (Id.)  Plaintiff sought to

---

[1] IMS-Tampa's memorandum of points and authorities refers to IMS-NJ as "American Union."  (Def. [IMS-Tampa's] Mot. Dismiss Attach. #1 Mem. P. & A. 5-6, ECF No. 39.)

13cv2741 BAS(RBB)

1   depose Henry Dering, IMS-NJ's vice president, and the president or

2   secretary of IMS-TX.  (Id.)  The Court granted in part Plaintiff's

3   motion on April 17, 2014, and set the deadline for compliance with

4   the Order for May 8, 2014.  (Order Granting & Den. Pl.'s Mot.

5   Compel Jurisdictional Disc. 33, ECF No. 67.)

6       In his Motion for Sanctions, Myhre alleges that Defendants'

7   supplemental discovery responses served on May 8 and May 9, 2014,

8   were "materially non-compliant with the Court's discovery order."

9   (Pl.'s Mot. Sanctions Attach. #1 Mem. P. & A. 5,[2] ECF No. 79.)

10  Myhre seeks various issue sanctions as well as the attorney's fees

11  associated with bringing this motion.  (Id.)

## II.   LEGAL STANDARDS

13      Rule 37 of the Federal Rules of Civil Procedure enables the

14  propounding party to bring a motion to compel responses to

15  discovery requests.  Fed. R. Civ. P. 37(a)(3)(B).  Rule 37(a)(5)

16  authorizes the imposition of sanctions against the party whose

17  conduct necessitated the motion to compel.  The rule authorizes the

18  Court to issue the following types of sanctions against a party who

19  fails to obey an order to provide or permit discovery:

20      (i) directing that the matters embraced in the order or
        other designated facts be taken as established for
21      purposes of the action, as the prevailing party claims;

22      (ii) prohibiting the disobedient party from supporting or
        opposing designated claims or defenses, or from
23      introducing designated matters in evidence;

24      (iii) striking pleadings in whole or in part;

25      (iv) staying further proceedings until the order is
        obeyed;

---

[2] Because Plaintiff's brief is not consecutively paginated,
the Court will cite to it using the page numbers assigned by the
Court's ECF system.

1    (v) dismissing the action or proceeding in whole or in
     part;

2

3    (vi) rendering a default judgment against the disobedient
     party; or

4    (vii) treating as contempt of court the failure to obey
     any order except an order to submit to a physical or

5    mental examination.

6    Fed. R. Civ. P. 37(b)(2)(A).  Furthermore, Rule 37(b)(2)(C)

7    provides that "[i]nstead of or in addition to the orders above, the

8    court must order the disobedient party, the attorney advising that

9    party, or both to pay the reasonable expenses, including attorney's

10   fees, caused by the failure, unless the failure was substantially

11   justified or other circumstances make an award of expenses unjust."

12   Id.  "By the very nature of its language, sanctions imposed under

13   Rule 37 must be left to the sound discretion of the trial judge."

14   O'Connell v. Fernandez-Pol, 542 F. App'x 546, 547-48 (9th Cir.

15   2013) (citing Craig v. Far West Eng'g Co., 265 F.2d 251, 260 (9th

16   Cir. 1959)).

17       In addition, federal courts have inherent power to impose

18   sanctions against both attorneys and parties for "bad faith"

19   conduct in litigation or for "willful disobedience" of a court

20   order.  Chambers v. NASCO, Inc., 501 U.S. 32, 45 (1991); Roadway

21   Express, Inc. v. Piper, 447 U.S. 752, 764-66 (1980).  The Court may

22   assess attorney fees or other sanctions under its inherent power

23   for the "wilful disobedience of a court order."  Chambers, 501 U.S.

24   at 45 (citing Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421

25   U.S. 240, 258 (1975)).  A fee award under the Court's inherent

26   power is meant to vindicate judicial authority, rather than to

27   provide a substantive remedy to an aggrieved party:  "The wrong

28   //

7                                                        13cv2741 BAS(RBB)

1   done was to the court."  <u>Mark Indus., Ltd. v. Sea Captain's Choice,</u>

2   <u>Inc.</u>, 50 F.3d 730, 733 (9th Cir. 1995).

3                          **III.  DISCUSSION**

4        Plaintiff moves the Court for sanctions under the Federal Rule

5   of Civil Procedure 37 against Defendants IMS-NJ, IMS-TX, IMS-GA,

6   IMS-FL, and IMS-Miami because of their failure to comply with the

7   Court's April 17, 2014 Order Granting in Part and Denying in Part

8   Plaintiff's Motion to Compel Jurisdictional Discovery [ECF No. 67].

9   (Pl.'s Mot. Sanctions Attach. #1 Mem. P. & A. 4-5, ECF No. 79.)

10  Myhre alleges that the supplemental discovery responses Defendants

11  provided were not in compliance with the Court's discovery order.

12  (<u>Id.</u> at 5.)  Based on this, Plaintiff requests the following

13  sanctions:

14       1. Prohibiting these Defendants from opposing Plaintiff's
         allegations that they are alter egos of each other for
15       purposes of this case;

16       2. Prohibiting these Defendants from opposing diversity
         jurisdiction over this case;
17
         3. Prohibiting these Defendants from contesting venue of
18       this case; and

19       4. Attorney's fees in an amount . . . caused by Defendants'
         non-compliance with the subject discovery order.
20

21  (<u>Id.</u>)  Myhre argues that because the documents Defendants failed to

22  produce relate to their corporate structure, as well as the

23  disputed issues of jurisdiction and venue, Defendants should be

24  precluded from challenging Plaintiff's alter ego allegations,

25  contesting venue, and disputing subject matter jurisdiction in this

26  case.  (<u>Id.</u>)  Plaintiff also seeks attorney's fees in the amount of

27  $6,297.50 incurred as a result of Defendants' failure to comply

28  with the Court's discovery order.  (Pl.'s Reply 11, ECF No. 84.)

**A.   Failure to Produce Documents Due to Counsel's Oversight**

The Court's jurisdictional discovery order addressed Plaintiff's requests for production which Defendants had not opposed.  (Order Granting & Den. Pl.'s Mot. Compel Jurisdictional Disc. 31, ECF No. 67.)  Under "Unopposed Requests," the Court ordered production of the following corporate records:  (1) bylaws or governing documents for Defendants IMS-TX (request number two), IMS-GA (request number two), IMS-FL (request number two), and IMS-Miami (request number two); (2) articles of incorporation and any amendments for Defendants IMS-FL (request number one) and IMS-Miami (request number one); (3) corporate records reflecting election of directors and/or officers since incorporation for Defendants IMS-TX (request number three), IMS-FL (request number three), and IMS-Miami (request number three); and (4) annual reports filed with any secretary of state since the date of incorporation for Defendants IMS-FL (request number four) and IMS-Miami (request number four).  (<u>Id.</u>)

Defendants concede that they failed to produce the documents specified in this section of the Court's Order but claim that it was due to their counsel's oversight.  (Defs.' Opp'n Mot. Sanctions Attach. #1 Decl. Wade 3, ECF No. 82.)  They represent that it was a "good faith mistake that defendants are urgently trying to remedy[,]" and they "fully expect to provide all responsive documents in their possession from the "Unopposed Requests" section

//

//

//

//

13cv2741 BAS(RBB)

of the Order as soon as possible and prior to the [June 16, 2014] hearing on this motion." (Defs.' Opp'n Mot. Sanctions 4,[3] ECF No. 82.)

Defendants had not opposed these requests. It is unclear whether this failure to oppose was also due to counsel's oversight. Myhre's Motion to Compel, however, explained that Defendants had promised, but failed to provide, the responsive documents. (Pl.'s Mot. Compel Attach. #1 Mem. P. & A. 12, ECF No. 42.) At the very least, Defendants were aware of these requests on March 5, 2014, when the Motion to Compel was filed, if not before. Defendants' attorneys do not contend that the first time they were put on notice regarding these requests was after the May 8, 2014 deadline to supplement discovery responses passed. In any event, Defendants failed to comply with the Court's Order, and the Plaintiff was forced to file yet another motion.

**B.   Defendants' Incomplete Supplemental Responses**

        1.   Request for production 5 to IMS-TX

Myhre alleges that Defendant IMS-TX's supplemental response to request for production five is noncompliant. (Pl.'s Mot. Sanctions Attach. #1 Mem. P. & A. 6, ECF No. 79.) The Court ordered IMS-TX to produce its profit and loss statements for the last five years. Plaintiff alleges that Defendant produced "a one-page document captioned 'Houston Profit/Loss Statement' with a single line for income and expense for the past four years." (Id.) Myhre argues that a statement from the Houston church is incomplete because "[a]ccording to the official church website, there are churches in

---

[3] Because Defendants' brief is not consecutively paginated, the Court will cite to it using the page numbers assigned by the Court's ECF system.

Dallas and Houston, and this is backed up by Church Member Reports produced that show the existence of a church in Dallas at least as late as 2010." (Id.) Plaintiff argues that the supplemental response is inconsistent with IMS-TX's initial response to interrogatory number eight which discussed multiple church locations in Texas. (Id.)

In opposition, IMS-TX argues that its initial response to interrogatory eight, which listed a "local business contact address" in Henderson, Texas, should be ignored because that response has been updated by the supplemental response, which discloses only one church. (Defs.' Opp'n Mot. Sanctions 11-12, ECF No. 82.) Defendant also maintains that it produced all records within its possession, custody, and control. (Id. at 11.) Defendant does not cite any authority or explanation for its contention that because it has provided a supplemental response to interrogatory eight, the initial response should be ignored.

The original response to Plaintiff's interrogatory stated that IMS-TX has "multiple church locations in Texas, all of which are public record, with a local business contact address of 4765 FM 2865 E. Henderson, TX 75654-2329." (Second Notice of Resubmission Attach. #6 Ex. F, at 8, ECF No. 44.) This response was verified on February 24, 2014, under penalty of perjury, by Pastor Tzvetan Petkov, President of the Seventh-Day Adventist Church Reform Movement American Union. (Pl.'s Mot. Compel Attach. #13 Ex. J, at 1-5, ECF No. 42.) Following the Court's jurisdictional discovery order, Defendant supplemented its response and now states that "[t]here is one church in Texas located at 1812 Maine St., Pasadena, TX 77587." (Pl.'s Mot. Sanctions Attach. #3 Ex. 2, at

12, ECF No. 79.)  This undated supplemental response is verified by
Virgilio Zapeta, an officer of IMS-TX.  (Id.)  Yet, it appears that
even this response is incorrect.  Defendant now submits a
declaration from Pastor Petkov, who verified IMS-TX's initial
responses to the interrogatories, in which Petkov states that
"[t]he address for the Texas church had also changed," and he
corrects Zapeta's verified discovery response and states that "the
proper address" is actually 1812 Main St., South Houston, TX 77587.
(Defs.' Opp'n Mot. Sanctions Attach. #3 Decl. Petkov 3, ECF No.
82.)  This most recent declaration is signed by Petkov under
penalty of perjury on May 29, 2014.  (Id. at 5.)

     Defendants do not explain the inconsistency between the
original interrogatory response and the supplemental responses.
The Defendant's responses and argument leave the Court with the
impression that at some point during the relevant time period more
than a "Houston" church existed.  Similarly, the five-line "Houston
Profit/Loss Statement" appears to be a document created in response
to request for production number five.  If so, that is
insufficient.

          2.  <u>Interrogatories 5, 7, and 8 to IMS-TX</u>

     Myhre contends that IMS-TX's supplemental responses to
interrogatories five, seven, and eight are incomplete.  (Pl.'s Mot.
Sanctions Attach. #1 Mem. P. & A. 7, ECF No. 79.)  Interrogatory
number five requested the name, address, and role of any employees,
independent contractors, or other agents that conduct the
day-to-day activities of Defendant.  (Id. Attach. #3 Ex. 2, at 10-
11.)  Defendant provided the following response:  "During the time
period of December 2013 through January 2014, Virgilio Zapeta,

12487 Wood Creek Drive, Willis, TX 77318, conducted the day to day operations." (Id. at 11.) Myhre argues that the supplemental response is incomplete because it is limited to an arbitrary time frame which "neither extends back to the time the lawsuit was filed, nor extends to the date of the responses." (Pl.'s Mot. Sanctions Attach. #1 Mem. P. & A. 8, ECF No. 79.) Defendant IMS-TX argues that the request is "written in the present tense" and does not call for past information, and thus the response need not go back to the time the lawsuit was filed. (Defs.' Opp'n Mot. Sanctions 12, ECF No. 82.) Defendant acknowledges that the interrogatory answer does not extend through the date of the response and states that it will provide a further verified response that "Zapeta continues to conduct day-to-day activities." (Id. at 13.)

Interrogatory seven asked for all officers and directors of IMS-TX from incorporation to the present. (Pl.'s Mot. Sanctions Attach. #1 Mem. P. & A. 7, ECF No. 79.) The following response was provided:

> During the time period of December 2013 through January 2014, Church Directors were as follows:
>
> Virgilio Zapeta, 12487 Wood Creek Dr., Willis, TX 77318
>
> Juan Pablo Reyes, 8044 Milredge St., Houston, TX 77017
>
> Cecelia Hernandez, 1610 Beaver Bend Rd., Houston, TX 77587
>
> Uldarico Alejos, 1280 Little Deer Run, Canton, GA 30102
>
> The Seventh-Day Adventist Church Reform Movement American Union International Missionary Society was incorporated in 1998 and dissolved in 2009, then was re-incorporated by Uldarico Alejos in 2012.

1   (Id. at 7-8.)  Plaintiff alleges this supplemental response is both

2   incomplete and contains false information; he notes that the 2012

3   filing that placed Defendant back in active status was done by

4   Petkov, not Alejos.  (Id. at 8.)  Myhre also argues that the time

5   frame of December 2013 through January 2014 is incomplete.  (Id.)

6   The Court's order set the responsive time frame as the last ten

7   years or from the date of incorporation, whichever is shorter.

8   (Id.)

9        Defendant argues that its response is neither deceptive nor

10  incomplete because it provided all the information in its

11  possession.  (Defs.' Opp'n Mot. Sanctions 4, ECF No. 82.)

12  Defendant's explanation that it dissolved in 2009 and re-

13  incorporated in 2012 suggests, however, that records dating back at

14  least to 2012 should be available.  No explanation is offered by

15  Defendant for the failure to produce its records for the time

16  period from 2004 to 2009 and from 2012 until December 2013.  The

17  statement that it produced all responsive information implies that

18  no other records exist.  The Defendant was required to fully comply

19  with this Court's order or clearly describe the reasons it could

20  not do so.  IMS-TX has done neither.

21       Interrogatory eight sought "actual office locations" of

22  Defendant IMS-TX.  (Pl.'s Mot. Sanctions Attach. #1 Mem. P. & A. 8,

23  ECF No. 79.)  As discussed above, Defendant provided inconsistent

24  discovery responses to this interrogatory.  The Court need not

25  resolve these inconsistencies.  Their effect on jurisdiction and

26  venue is for Judge Bashant to determine.

27  //

28  //

14

### 3.  Requests for production 3 and 5 to IMS-GA

Myhre argues that Defendant IMS-GA's supplemental responses to requests for production three and five do not comply with the Court's discovery order.  (Id. at 9.)  In response to request for production number three, which sought records reflecting the election of directors and officers of IMS-GA since incorporation, Defendant responded that "all documents within the possession, custody, and control of Responding Party will be produced herewith[,]" and produced a list of officers for "Southeastern Field," going back to 2008 instead of the date of incorporation in 1998.  (Pl.'s Mot. Sanctions Attach. #1 Mem. P. & A. 9, ECF No. 79; id. Attach. #3 Ex. 3, at 2.)  Plaintiff argues this response is not consistent with IMS-GA's identification of officers in Defendant's annual reporting to the Georgia Secretary of State.  (Pl.'s Mot. Sanctions Attach. #1 Mem. P. & A. 10, ECF No. 79.)

Defendant's opposition explains that the document was produced by mistake; it was intended to be produced in response to request number fourteen to IMS-NJ.  (Defs.' Opp'n Mot. Sanctions 15-16, ECF No. 82.)  Defendant incorrectly argues that "the Court compelled a response to this request in the 'Unopposed Requests' section of its order for which [its counsel] initially failed to request documents from the defendant churches."  (Id. at 15.)

The only unopposed requests for corporate records reflecting the election of directors and/or officers since incorporation were made to Defendants IMS-TX, IMS-FL, and IMS-Miami.  IMS-GA and IMS-NJ both objected to this request.  Defendant IMS-GA was ordered to produce documents described in request number three for "either the last ten years or since incorporation, whichever is shorter."

13cv2741 BAS(RBB)

1  (Order Granting & Den. Pl.'s Mot. Compel Jurisdictional Disc. 24,

2  ECF No. 67.)   The Court cautions Defendant to carefully review the

3  discovery requests, its responses, and the Court's orders before

4  making assertions not based in fact.   Defendant again states that

5  it is obtaining the requested documents and expects to produce them

6  to Plaintiff "prior to the hearing on this motion." (Defs.' Opp'n

7  Mot. Sanctions 16, ECF No. 82.)

8       Myhre maintains that the supplemental response to request

9  number five for profit and loss statements for the past five years

10 is incomplete.  (Pl.'s Mot. Sanctions Attach. #1 Mem. P. & A. 10,

11 ECF No. 79.)  Defendant IMS-GA produced a two-page document

12 entitled "Income and Expenses Financial Statement From the Year

13 2009 to 2013 From the Marietta Church." (Id. Attach. #3 Ex. 3, at

14 22-23.)  Myhre contends that this response is insufficient because

15 there are five churches in Georgia.  (Pl.'s Mot. Sanctions Attach.

16 #1 Mem. P. & A. at 10, ECF No. 79.)  In opposition, Defendant

17 argues that it complied with the order and produced all documents

18 within its possession, custody and control.  (Defs.' Opp'n Mot.

19 Sanctions 16, ECF No. 82.)  IMS-GA also states: "Plaintiff

20 provides no evidence that there are five churches in Georgia, and

21 indeed there are not. Petkov Dec. ¶ 11." (Id.)  Defendant misses

22 the point.  The issue is not whether there are five churches in

23 Georgia.  Rather, it is whether the production of financial

24 information from one church--the Marietta church--is responsive.

25 The declaration submitted by Pastor Petkov indicates that it is

26 not.  He states:

27            The plaintiff claims that we have five churches
           under the Georgia corporation.  This is not true.  The
28         corporation was originally registered when believers

16                                                    13cv2741 BAS(RBB)

formed the first church in Marietta, Georgia.  This was also where the first property was purchased.  Later on, a small group of members began worshiping in Acworth, Georgia.  When the headquarters of the General Conference of the IMS moved from California to Georgia, the Cedartown church was organized.

(Id. Attach. #3 Decl. Petkov 4-5.)  The declaration reveals the existence of another church located in Acworth, Georgia.  Pastor Petkov's declaration also states that IMS-GC moved to Georgia and organized the Cedartown church; whether its financial records should be produced in response to request five directed to IMS-GA cannot be determined from the information before the Court.

### 4.   Interrogatories 5 and 7 to IMS-GA

Interrogatories number five and seven to Defendant IMS-GA are identical to those propounded on IMS-TX, seeking information about individuals conducting day-to-day activities, and identifying all officers and directors for the past ten years or from the date of incorporation.  Myhre alleges that IMS-Georgia's supplemental responses were incomplete.  (Pl.'s Mot. Sanctions Attach. #1 Mem. P. & A. 10, ECF No. 79.)  In response to interrogatory five, Defendant stated:  "During the time period of December 2013, through January 2014, Angel Ojeida of Marieta [sic] Georgia conducted the day to day activities."  (Id. (alteration in original).)  Plaintiff argues that the supplemental response is incomplete because it is limited to an arbitrary time frame that "neither extends back to the time the lawsuit was filed, nor extends to the date of the responses."  (Id. at 11.)  Although IMS-GA was ordered to answer this interrogatory, the Defendant argues that the Plaintiff does not explain why the response should include the period since the time the lawsuit was filed.  (Defs.' Opp'n

Mot. Sanctions 17, ECF No. 82.)  Defendant also contends that this is a "minor issue" that does not warrant sanctions, and it will provide a further verified response stating that Mr. Ojeida continues to conduct day-to-day activities.  (<u>Id.</u>)

Plaintiff challenges Defendant's supplemental response to interrogatory seven, stating that it only identifies IMS-GA's officers and directors from 1997-1999 and December 2013-January 2014.  (Pl.'s Mot. Sanctions Attach. #1 Mem. P. & A. 11, ECF No. 79.)  The Court directed IMS-GA to provide names of its officers and directors for the last ten years or since incorporation, whichever is shorter.  (Order Granting & Den. Pl.'s Mot. Compel Jurisdictional Disc. 24, ECF No. 67.)

Defendant's supplemental response was as follows:

**RESPONSE TO INTERROGATORY NO. 7:**

During the time period of December 2013 through January 2014, Church Directors were as follows:

Angel Ojeida, Church Leader, 1035 Metropolitan Parkway, Atlanta, GA 30310

Niriam Chocoyo, Treasurer, 2433 Swanson Ct., Marieta, GA 30066

Tzvetan Petkov, 102 Virginia Circle, Cedartown, GA 30125 ***1998 (founding)***

Henry Dering, President, 3741 Valerio Dr., Cameron Park, CA 95682; served 1997 – 1999

Branko Cholich, Vice President, 10238 Bellman Ave., Downey, CA 90241; served 1997 – 1999

Gretchen Schendel, Secretary, 8725 Cherrington Lane, Elk Grove, CA 95624; served 1997 – 1999

Ernestine Schendel, Treasurer, 10117 Sheldon Rd., Elk Grove, CA 95624; served 1997 – 1999

Lambert Hazelhoff, Board Member, 1700 Kisra Lane, Powhatan, VA 23139; served 1997 – 1999

18

1    Antony Hernandez, Board Member, 3440 Steve Dr.,
     Marietta, GA 33064
2
     Idel Suarez, Jr., Board Member, 6515 Sheldon Road,
3    Tampa, FL 33615; served 1997 – 1999

4  (Pl.'s Mot. Sanctions Attach. #3 Ex. 4, at 29-30, ECF No. 79.)   In

5  its opposition to Plaintiff's Motion for Sanctions, Defendant IMS-

6  GA explains its interrogatory answer.

7        A review of defendants' response shows that defendants
         provided the names and addresses of 10 different board
8        members from 1999 through 2014.   Notice of Lodgment at
         29-30.   Again, the defendant churches have a total
9        membership of fewer than 400 people, and they have
         responded with all of the information that they have in
10       their possession.   The fact that plaintiff wants more
         information than defendants possess does not entitle him
11       to Rule 37 sanctions.   To the extent defendants discover
         further material information, such information will be
12       provided in a timely manner pursuant to Federal Rule of
         Civil Procedure 26(e).
13

14 (Defs.' Opp'n Mot. Sanctions 17, ECF No. 82.)

15       The supplemental response provided by IMS-GA does not clearly

16 show which individuals served as church directors during the

17 relevant time period.   If there were no directors between 1999 and

18 December 2013, Defendant IMS-GA should have made that clear.

19 Alternatively, if there are no records or information to identify

20 the individuals who served in that capacity, that response should

21 have been provided.   The same applies to the period from January

22 2014 through the date of Defendant's discovery response.   Notably,

23 in its prior filings with the Court, Defendant stated that "[a]s of

24 March 14, 2013, Neptali Acevedo was an officer in IMS-AU-GA [ECF

25 15, ¶80], and as of March 7, 2013, a secretary in IMS-AU-GA [Ex. E,

26 Req. JN]."   (Defs. [IMS-TX, IMS-GA, IMS-Miami & IMS-FL's] Mot.

27 Dismiss Attach. #1 Mem. P. & A. 19, ECF No. 34 (alteration in

28 original).)   IMS-GA also identified Tzvetan Petkov and Evelyn

1  Arevalo as officers in 2012 and 2013.  (Id.)  Defendant's argument

2  that its small size explains its inadequate corporate records is

3  belied by its February 10, 2014 representation that "the evidence

4  is that IMS-AU-TX, IMS-AU-GA, IMS MIAMI, and IMS-AU-FL have

5  observed corporate formalities."  (Id. at 10.)

6    Defendant's responses are insufficient to satisfy its

7  discovery obligations; it must make a reasonable effort to obtain

8  the records ordered produced.  See Kaur v. Alameida, No. CV F 05

9  276 OWW DLB, 2007 WL 1449723, *2 (E.D. Cal. May 15, 2007) (ordering

10  defendants to conduct additional research for responsive documents

11  and reminding defendants and counsel "of their duty under Rule 34

12  to conduct a diligent search and reasonable inquiry in effort to

13  obtain responsive documents"); see also Lopez v. Florez, No.

14  1:08-cv-01975-LJO-JLT, 2013 WL 1151948, at *2 (E.D. Cal. Mar. 19,

15  2013) ("A responding party has an affirmative duty to reasonably

16  seek information requested under Rule 34(a) from its agents or

17  others under its control) (citing Hill v. Eddie Bauer, 242 F.R.D.

18  556, 560 (C.D. Cal. 2007)).

19    When answering interrogatories, the obligations are similar.

20  "Rule 33 imposes a duty on the responding party to secure all

21  information available to it."  Thomas v. Cate, 715 F. Supp. 2d

22  1012, 1032 (E.D. Cal. 2010).  "When responding to interrogatories,

23  a party has a duty to respond with all information under its

24  custody and control."  Fresenius Med. Care Holding, Inc. V. Baxter

25  Int'l, Inc., 224 F.R.D. 644, 651 (N.D. Cal. 2004).  "Parties have

26  an obligation to make a reasonable effort to locate all documents

27  and information necessary to fully respond to discovery."  United

28  //

20

States v. Reeves, No. 2:12-CV-01916-JAD-GWF, 2013 U.S. Dist. LEXIS 146671, at *2-3 (D. Nev. Oct. 3, 2013).

For the reasons outlined above, Defendant's responses to the discovery requests are incomplete, and IMS-GA has not established that its deficient responses should be excused.  If it was unable to obtain the responsive records and information, it should have described its efforts to locate records and information, and the results of those efforts.

5.  Interrogatories 5 and 7 to IMS-FL

Plaintiff contends that IMS-FL failed to properly respond to interrogatories asking that it identify the persons conducting day-to-day activities (number five) and all officers and directors for the past ten years or from the date of incorporation (number seven).  (Pl.'s Mot. Sanctions Attach. #1 Mem. P. & A. 12, ECF No. 79.)  IMS-FL's response to interrogatory five states that "[d]uring the time period of December 2013 through January 2014, Ciro Arevalo, President of the Southeastern Field, 10700 Harkwood Blvd., Orlando, FL 32817 conducted day to day operations."  (Id. Attach. #3 Ex. 6, at 42.)  Defendant concedes that its response "does not extend to the date the response was given," and promises to provide "a further verified response."  (Defs.' Opp'n 18, ECF No. 82.) Defendant responded to interrogatory seven in a similar fashion, only providing names of individuals serving on its board of directors from December 2013 through January 2014.  (Id.)  IMS-FL argues that "defendants have responded with all of the information that they have in their possession."  (Id.)  It is not clear whether Defendant contends that on May 8, 2014, the date the supplemental response was given, it did not know the identities of

21

individuals that previously served as its directors.  Likewise,
Defendant does not assert that records prior to December 2013 do
not exist.  Indeed, in an earlier submission to the Court, IMS-FL
represented that "[a]s of January 14, 2013, [Henry] Dering was vice
president for IMS-AU-FL . . . ."  (Defs. [IMS-TX, IMS-GA, IMS-Miami
& IMS-FL's] Mot. Dismiss Attach. #1 Mem. P. & A. 18, ECF No. 34.)
This statement is inconsistent with Defendant's argument that it
has provided all the information available to it.

IMS-FL's responses do not satisfy its discovery obligations
under Rule 33.  Defendant was required to produce all responsive
information as ordered by the Court.  It has not complied with this
Court's discovery order, and it has not provided a satisfactory
explanation for its failure to do so.

### 6.  Request for production 5 to IMS-Miami

Myhre's request for production number five to Defendant IMS-
Miami sought profit and loss statements for the last five years.
Plaintiff alleges that Defendant provided only two years of
responsive documents, and the documents are in Spanish.  (Pl.'s
Mot. Sanctions Attach. #1 Mem. P. & A. 13, ECF No. 79.)  Defendant
argues that sanctions are not warranted "because defendants only
possessed two years of such documents when [Myhre] wanted more."
(Defs.' Opp'n 20, ECF No. 82.)

Defendant IMS-Miami was not required to provide Myhre with an
English translation of Spanish-language documents, and Plaintiff
has cited no authority imposing that requirement.  Nevertheless,
its production is incomplete.  Defendant's brief does not explain
what efforts IMS-Miami employed to obtain the requested documents.
As stated above, this is insufficient to satisfy its discovery

obligations under Rule 34.  Defendant IMS-Miami was required to
produce all records for the time period ordered by the Court, or if
it was unable to do so, it should have described the efforts made
to locate the records and the results of those efforts.

### 7.   Interrogatories 2, 5, and 7 to IMS-Miami

In his motion to compel a supplemental response to
interrogatory number two to IMS-Miami, Myhre sought clarification
of the term "local" as used by Defendants in reference to churches
and the area they serve.  (See Order Granting & Den. Pl.'s Mot.
Compel Jurisdictional Disc. 26, ECF No. 67.)  Plaintiff now moves
for sanctions, arguing that Defendant's supplemental response is
substantially the same as its original response.  (Pl.'s Mot.
Sanctions Attach. #1 Mem. P. & A. 13, ECF No. 79.)  Defendant
concedes that it failed to properly supplement its prior response,
and states that this was "an oversight and a further response will
be provided as soon as possible and prior to the hearing on this
motion."  (Defs.' Opp'n 20, ECF No. 82.)

Interrogatories five and seven to IMS-Miami are identical to
those propounded to IMS-TX, IMS-GA, and IMS-FL, requesting
identification of the persons conducting day-to-day activities for
these churches, and the identification of all officers and
directors for the past ten years or from the date of incorporation.
(Pl.'s Mot. Sanctions Attach. #1 Mem. P. & A. 14, ECF No. 79.)
Plaintiff alleges that, similarly to other Defendants, IMS-Miami
provided responses limited to the time period of December 2013
through January 2014.  (Id. at 14-15.)

IMS-Miami responded to interrogatory number five that
"[d]uring the period of December 2013 through January 2014,

Alejandro Pena Sr., 528 S W1 St. Apt 2, Miami, FL 33130, conducted day to day operations." (Id. Attach. #4 Ex. 8, at 10.)  Defendant argues that to the extent the response needs to extend to the date it was given, May 8, 2014, it will provide a further verified response.  (Defs.' Opp'n 21, ECF No. 82.)

In response to interrogatory seven, Defendant stated:

During the time period of December 2013 through January 2014, the Board of Directors were as follows:

Elsa Argueta, 1800 S.W. 9 Street, Miami, FL 33135

Elsa E. Tapia, 1800 SW 9 Street, Miami, FL 33135
Alejandro Pena, Sr., 528 SW 1st Street, Apt. 2, Miami, FL 33130

During the time period of December 2013 through January 2014, Church Directors were as follows:

Church Leader:  Alejandro Pena, Sr.

Secretary:  Amanda Navedo, 501 SW 35 Ave, Miami, FL 33135

Treasurer:  Alejandro Pena, Sr.

(Pl.'s Mot. Sanctions Attach. #4 Ex. 8, at 10, ECF No. 79.) Plaintiff contends that this response is incomplete because it is limited to the names of church leaders from December 2013 through January 2014, and does not extend back ten years or to the date of IMS-Miami's incorporation.  (Pl.'s Mot. Sanctions Attach. #1 Mem. P. & A. 15, ECF No. 79.)  In opposing the request for sanctions, Defendant again states:  "Defendants have provided all of the responsive information in their possession.  Plaintiff can make of that what she will, but plaintiff is not entitled to sanctions when defendants responded to the best of their ability with all of the information at their disposal."  (Defs.' Opp'n Mot. Sanctions 21, ECF No. 82.)

The Defendant's response is also contradicted by evidence it submitted previously to the Court.  IMS-Miami requested that the Court take judicial notice of a "'Detail by Entity Name' from the Florida Department of State website (http://search.sunbiz.org/Inquiry/CorporationSearch) for IMS-Miami as of January 15, 2014."  (See Defs. [IMS-TX, IMS-GA, IMS-Miami & IMS-FL's] Mot. Dismiss Attach. #3 Re. Judicial Notice Ex. G, at 1-2, ECF No. 34.)  The entry lists several individuals under the section titled "Officer/Director Detail," including Elsa Argueta, Elsa Tapia, and Alejandro Pena.  It also shows that annual reports were filed on March 1, 2011, April 3, 2012, and April 24, 2013, which presumably identify the directors for those years.  (Id. at 21-22.)  The supplemental response demonstrates that IMS-Miami did not undertake reasonable efforts to answer this interrogatory.

### 8.   Requests for production 14 and 18 to IMS-NJ

Plaintiff alleges that Defendant IMS-NJ did not adequately respond to his request for production fourteen which sought "copies of all Field-Union Officer Election, Secretarial Six-Month Report, Quarterly Church Missionary Report, and Church Membership List reports prepared by, submitted to, or copied to, Responding Party from 2008 to the present."  (Pl.'s Mot. Sanctions Attach. #1 Mem. P. & A. 15, ECF No. 79.)  Myhre contends that IMS-NJ submitted Church Membership List reports dating only through December 2010, and Secretarial Six-Month Reports only through June 2011.  (Id.) Defendant's response stated:  "Please note that none of these reports have been kept since 2011."  (Id. Attach. #4 Ex. 9, at 17, ECF No. 79.)  Plaintiff argues that this statement "is belied by other documents produced earlier, namely the minutes of the

American Union delegates meeting in August 2013, wherein the American Union Secretary provided a report including the precise membership numbers." (Pl.'s Mot. Sanctions Attach. #1 Mem. P. & A. 15, ECF No. 79.)

In opposition, IMS-NJ claims that it provided all membership lists within its possession, custody, and control. Defendant maintains that no written reports after 2011 exist and explains that the report regarding membership at the 2013 American Union delegates meeting was made orally. (Defs.' Opp'n Mot. Sanctions 21-22, ECF No. 82.)

Lastly, Plaintiff challenges Defendant's supplemental response to his request for documents identifying real property in California in which IMS-NJ held a beneficial interest at any time in the past ten years (request eighteen). (Pl.'s Mot. Sanctions Attach. #1 Mem. P. & A. 15, ECF No. 79.) Myhre contends that IMS-NJ failed to provide documents regarding property owned by the church in Huntington Park, California. (Id. at 16.) IMS-NJ argues that it provided all documents in its possession, custody, and control, including for properties located in Sacramento, Elk Grove, and Riverside. (Defs.' Opp'n 22, ECF No. 82.) Defendant claims that it made a good faith effort "to locate responsive documents for the Huntington Park address that plaintiff has pointed out, but could not locate them[,]" but the documents have since been located and are attached to the opposition papers. (Id.) IMS-NJ argues it should not be sanctioned because its response was "complete and accurate with the information [Defendant] possessed at the time of the response."

//

1    In opposing Myhre's earlier motion to compel discovery,

2    Defendant IMS-NJ argued that the Court should deny Plaintiff's

3    request for documents because the real property locations are

4    equally available to Myhre through searches of public records or

5    the church's website.  (See Defs.' Opp'n Mot. Compel 16, ECF No.

6    58.)  Defendant now claims it should not be sanctioned for failing

7    to comply with the Court's order because it "made a good faith

8    effort to locate" responsive documents.  (Defs.' Opp'n Mot.

9    Sanctions 22, ECF No. 82.)  The evidence of IMS-NJ's good faith

10   efforts is one conclusory paragraph in a declaration of its

11   Secretary, Margie Seely.

> I also made a good faith effort to locate documents
> responsive to Request 18 to IMS-New Jersey, including in
> relation to the Huntington Park, California address
> mentioned in plaintiff's motion.  At first, I was unable
> to locate responsive documents.  However, we ultimately
> located one such document, and we understand that this
> will be provided to plaintiff as soon as possible (if it
> has not already been provided).

17   (Id. Attach. #2 Decl. Seely 6.)  Seely's declaration does not

18   explain what actions she undertook to search for the real

19   properties owned by IMS-NJ in California, for example, what she had

20   to do to ultimately locate the Huntington Park documents and why

21   those actions were not undertaken sooner.

22   **C.  Attorney's Fees Sanction**

23   Rule 37(b)(2) of the Federal Rules of Civil Procedure states

24   that if a party fails to obey an order to provide or permit

25   discovery, the court may issue further orders, which may include

26   the imposition of sanctions upon the disobedient party.  Fed. R.

27   Civ. P. 37(b)(2)(A).  The Court may assess attorney's fees pursuant

28   to the Federal Rules of Civil Procedure 37(b)(2)(c), which requires

the disobedient party to pay reasonable attorney's fees caused by its failure to comply unless the failure was substantially justified or other circumstances make an award of expenses unjust. The party seeking the award of fees must submit evidence to support the number of hours worked and the rates claimed. <u>Van Gerwen v. Guarantee Mut. Life Co.</u>, 214 F.3d 1041, 1045 (9th Cir. 2000).

Here, Plaintiff originally sought $3,960.00 in attorney's fees for preparation of the Motion for Sanctions; Myhre's counsel anticipated incurring additional fees to review and reply to the Defendants' opposition. (Pl.'s Mot. Sanctions Attach. #1 Mem. P. & A. 23, ECF No. 79.) The declaration submitted by Plaintiff's counsel details the time and expenses incurred. Counsel spent "approximately 6.1 hours in reviewing Defendants' supplemental discovery responses and identifying areas of non-compliance, seeking to obtain resolution of this matter by way of belated compliance, entry into a stipulation of facts, or other resolution," and additional 8.3 hours to draft the Motion for Sanctions. (Pl.'s Mot. Sanctions Attach. #2 Decl. Kramer 3-4, ECF No. 79.) Kramer has twenty years of trial experience and represents that her hourly rate of $275 is equal to, if not less than, the rate of similarly qualified attorneys in the Southern District of California. (<u>Id.</u> at 4.) Her rate and fees are reasonable in light of counsel's experience and qualifications.

After Defendants opposed the Motion for Sanctions, Plaintiff submitted a declaration from his counsel stating that Kramer spent an additional 8.5 hours reviewing and responding to Defendants' filing. (Pl.'s Reply Attach. #1 Decl. 5, ECF No. 84.) Plaintiff's counsel states that she spent a total of 22.9 hours in connection

13cv2741 BAS(RBB)

with Plaintiff's Rule 37 motion.  (<u>Id.</u>)  Myhre currently seeks an
award of $6,297.50 in attorney's fees from Defendants for their
failure to sufficiently comply with the Court's jurisdictional
discovery order.

Defendants argue they made a good faith effort to comply with
the Court's discovery order.  (Defs.' Opp'n 7, ECF No. 82.)  A
finding of good faith may be a consideration in determining whether
the imposition of sanctions would be unjust.  <u>Hyde & Drath v.</u>
<u>Baker</u>, 24 F.3d 1162, 1171 (9th Cir. 1991).  "[D]isobedient conduct
not shown to be outside the control of the litigant is all that is
required to demonstrate willfulness, bad faith, or fault."  <u>Id.</u> at
1167; <u>Fjelstad v. Am. Honda Motor Co.</u>, Inc., 762 F.2d 1334, 1341
(9th Cir. 1985).  Moreover, the Ninth Circuit has held that
sanctions may be imposed even for negligent failures to provide
discovery.  <u>See Fjelstad</u>, 762 F.2d at 1343; <u>Lew v. Kona Hosp.</u>, 754
F.2d 1420, 1427 (9th Cir. 1985); <u>Marquis v. Chrysler Corp.</u>, 577
F.2d 624, 642 (9th Cir. 1978).  The party opposing the imposition
of sanctions has the burden of establishing substantial
justification for its actions or special circumstances.  <u>Hyde &</u>
<u>Drath v. Baker</u>, 24 F.3d at 1171.

Defendants have not met their burden.  First, despite
receiving notice from Plaintiff of the insufficient discovery
responses on May 9, 2014, counsel did not call Plaintiff's counsel
to resolve the issues until May 16, 2014.  (<u>See</u> Pl.'s Mot.
Sanctions Attach. #2 Decl. Kramer 3, ECF NO. 79.)  Second, although
acknowledging multiple deficiencies in the supplemental responses,
Defendants do not offer a coherent and credible explanation for
majority of the omissions.  Instead, they assert the records either

do not exist, or are outside of Defendants' control.  But when

opposing Plaintiff's Motion to Compel [ECF No. 42], Defendants

never argued that these records existed.  Plaintiff points out that

Defendants also sought a protective order against production of the

documents they currently contend never existed.  (Pl.'s Mot.

Sanctions Attach. #1 Mem. P. & A. 18, ECF No. 79.)  Defendants'

assertion that obtaining documents is difficult because they are

small corporations with limited resources is not persuasive.

Plaintiff's request involves basic corporate records.  Plaintiff

notes that in opposing the Motion for Sanctions, Defendants

submitted declarations from Mr. Petkov and Ms. Seely, two current

officers of four Defendants, who presumably had the duty to observe

corporate formalities and maintain records.  (Pl.'s Reply 6-7, ECF

No. 84.)  Moreover, to the extent Defendants required more time to

comply with the deadline for production, they should have sought an

extension.  Defendants have not shown that their noncompliance was

substantially justified or that other circumstances make an award

of attorney's fees unjust.

     As a result of Defendants' refusal to provide discovery,

Plaintiff was forced to file two motions.  The initial motion to

compel was filed on March 5, 2014.  (See Order Granting & Den. Mot.

Compel Jurisdictional Disc. 1, ECF No. 67.)  For the most part,

Plaintiff's motion was granted, and Defendants were directed to

provide or supplement their discovery responses by May 8, 2014.

(Id. at 33.)  When they failed to do so, Myhre filed this motion

for sanctions on May 16, 2014.  Even at the time of their

opposition to the motion for sanctions, May 30, 2014, Defendants

still had not complied with the Court's April 17, 2014 discovery

order.   Under these circumstances, the attorney's fees incurred in
bringing Plaintiff's motion for sanctions for Defendants' failure
to comply with the Court's order is an appropriate compensatory
sanction.   See Devaney v. Cont'l Am. Ins. Co., 989 F.2d 1154, 1163
(11 Cir. 1993) (affirming award of sanctions where plaintiff
brought a successful motion to compel and "then a motion for
sanctions when [Defendant] failed to comply with the court order
granting the motion to compel[]").

### D.   Resolving Disputed Issues as a Sanction

Myhre seeks evidentiary sanctions in connection with
Defendants' noncompliance with the Court's discovery order.
Plaintiff argues that the disputed issues of citizenship for
purposes of diversity jurisdiction, as well as Defendants' contacts
with the Southern District for purposes of venue, should be
resolved in Plaintiff's favor.  (Pl.'s Mot. Sanctions Attach. #1
Mem. P. & A. 21, ECF No. 79.)  Myhre also requests that the Court
rule "that these Defendants failed to observe corporate formalities
and these five Defendants are alter egos of each other."  (Id. at
22.)  Plaintiff argues that "less drastic sanctions . . . may be
available, but wouldn't be appropriate."  (Id. at 19.)

The requested sanctions against these Defendants are severe.
The Court will evaluate the Plaintiff's request as analogous to a
motion seeking dismissal under Rule 37(b)(2) for noncompliance with
a discovery order.   In that context, the Court considers five
factors:  "(1) the public's interest in expeditious resolution of
litigation; (2) the court's need to manage its docket; (3) the risk
of prejudice to [the party seeking sanctions]; (4) the public
policy favoring disposition of cases on their merits; and (5) the

13cv2741 BAS(RBB)

1   availability of less drastic sanctions." Rio Props., Inc. v. Rio

2   Int'l Interlink, 284 F.3d 1007, 1022 (9th Cir. 2002); see Computer

3   Task Group, Inc. v. Brotby, 364 F.3d 1112, 1115 (9th Cir. 2004).

4       The Court finds that the requested issue sanctions are not

5   appropriate at this time.  Venue and Defendants' citizenship are

6   currently the subject of Defendants' Rule 12 motions pending before

7   Judge Bashant.  Plaintiff will be able to argue Defendants'

8   inconsistent assertions to the Court.  Additionally, the policy

9   favoring disposition on the merits weighs against the exclusion of

10  evidence, especially when the imposition of monetary sanctions is

11  available.  Accordingly, Myhre's request that disputed issues be

12  resolved in his favor is premature.

13                        **IV. CONCLUSION**

14      For the reasons stated above, the Court **GRANTS in part** and

15  **DENIES in part** Plaintiff's Motion for Sanctions [ECF No. 79].  The

16  Court GRANTS Myhre's request for reasonable attorney's fees in the

17  amount of $6,297.50 incurred in pursuing this motion.  The

18  sanctions are assessed against Defendants IMS-TX, IMS-GA, IMS-FL,

19  IMS-Miami, and IMS-NJ, severally.  Each of these Defendants shall

20  pay to Plaintiff $1,259.50 on or before August 15, 2014.  The Court

21  DENIES Plaintiff's request for other sanctions.

22      **IT IS SO ORDERED.**

23  Dated: July 1, 2014          _____
                                        Ruben B. Brooks
24                               United States Magistrate Judge

25  cc:  Judge Bashant
         All Parties of Record

26

27

28